UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : Case No. 3:19-cr-00139 |
| v. | : |
| | : Judge Thomas M. Rose |
| DASEAN BARKER, | : |
| Defendant. | : |

**ENTRY AND ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (DOC. NO. 61)**

This case is before the Court on the Motion for Compassionate Release (Doc. No. 61) (the "Motion"), filed by Dasean Barker ("Barker"). Barker is currently incarcerated at FCI [Federal Correctional Institution] Elkton in Ohio. (*See* FEDERAL BUREAU OF PRISONS INMATE LOCATOR, https://www.bop.gov/inmateloc (last visited June 11, 2021).)  He asks the Court for compassionate release from his term of imprisonment. More specifically, he asks that this Court grant him "compassionate release under Title 18 U.S.C. § 3582(c)(1)(A), and based on 'extraordinary and compelling reasons.'" (Doc. No. 61 at PageID 193.)  For the reasons discussed below, the Court **DENIES** Barker's Motion.

### I. BACKGROUND

On September 18, 2019, the United States of America (the "Government") filed an Information against Barker, charging him with two separate counts: one count of Possession with Intent to Distribute under 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and one count of being a felon in possession of a firearm under 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Doc. No. 42.)  On November 19, 2019, pursuant to a plea agreement, Barker pleaded guilty to the offenses charged. (Doc. No.

1

46.) The Statement of Facts attached to the Plea Agreement, signed by Barker and his attorney, states, in part:

> On July 19, 2018, in the Southern District of Ohio, Defendant Dasean Barker ("BARKER") knowingly and intentionally possessed with intent to distribute heroin and fentanyl. Additionally on that date, BARKER knowing he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed a firearm, and the firearm was in and affecting commerce.
>
> On July 19, 2018, law enforcement made a valid stop of a vehicle in which BARKER was a passenger following observations of a suspected hand-to-hand drug trafficking transaction. After stopping the vehicle, law enforcement conducted a valid inventory search of the vehicle prior to towing the vehicle. Inside the vehicle were multiple cell phones, suspected narcotics, and $279 in United States currency. BARKER was arrested and lawfully searched pursuant to that arrest. BARKER had an additional $2,250 in United States currency on his person.
>
> Following Miranda, BARKER advised law enforcement that he sells illegal narcotics. BARKER gave lawful consent for law enforcement officers to conduct a search of his residence, where BARKER advised law enforcement would locate additional narcotics and a firearm.
>
> On that same date, law enforcement conducted the consent search of BARKER's residence and located suspected narcotics and a Glock, Model 19, 9mm firearm bearing serial number ABXX829 with an extended magazine loaded with sixteen (16) rounds of ammunition.

(Doc. No. 46 at PageID 123.)

The Final Presentence Investigation Report ("PSI") regarding Barker provides additional information about the circumstances of the offense, and identifies four prior adult criminal convictions, several minor convictions, and three additional arrests. (PSI ¶¶ 11-15, 52–60.) Barker's criminal history includes convictions for conspiracy to distribute and possess with intent to distribute heroin and cocaine in 2009 and possession of heroin in 2012. (*Id.*) Additionally, Barker was found in violation of his probation in 2012. (*Id.* at ¶ 52.) The PSI indicates that Barker accepted responsibility for the present offense. (*Id.* at ¶ 48.)

At sentencing, the Court imposed a 41-month period of incarceration for each of the two

counts, to be served concurrently, three years of supervised release with additional conditions, and a $200 special assessment. (Doc. No. 54 at PageID 151.) Barker is currently 31 years old and has an anticipated release date of March 8, 2023. (*See* FEDERAL BUREAU OF PRISONS INMATE LOCATOR, https://www.bop.gov/inmateloc (last visited June 11, 2021).)

The Government has filed a Response to the Motion (Doc. No. 63), which it amended to include attachments. (Doc. No. 64.) The matter is ripe for review and decision.[1]

## II. ANALYSIS

### A. Legal Standards

A district court has limited authority to modify a sentence. *United States v. Ruffin*, 978 F.3d 1000, 1003 (6th Cir. 2020) ("[s]ince the Sentencing Reform Act of 1984, federal law has generally prohibited a district court from modifying a term of imprisonment once it has been imposed") (alterations adopted) (internal quotation marks omitted). "Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Hammond*, 712 F.3d 333, 335 (6th Cir. 2013). Section 3582(c)(1)(A) grants such authority in certain limited circumstances. It provides, in part:

---

[1] Section 603(b) of the First Step Act, which was signed into law on December 21, 2018, modified 18 U.S.C. § 3582 to allow a defendant to bring a motion on his or her own behalf either "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); Pub L. No. 115-391, 132 Stat. 5194; *see also United States v. Alam*, 960 F.3d 831, 833-34 (6th Cir. 2020) ("If the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only by moving for it on his own behalf. To do that, he must fully exhaust all administrative rights to appeal with the prison or wait 30 days after his first request to the prison," and "[p]risoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them") (internal quotation marks omitted) (alterations adopted); *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020) ("defendants now may bring reduction-of-sentence motions on their own once they exhaust any administrative remedies or wait 30 days from the date they request relief from the Bureau of Prisons"). Here, Barker sent a request to the warden, requesting compassionate release or a reduction of sentence on his behalf. (Doc. No. 64-1 at PageID 221.) The warden denied this request for failure to meet the necessary criteria for review. (Doc. No. 64-2 at PageID 222.) Additionally, the Government does not contest exhaustion, so the Court proceeds with the understanding that Barker could move for compassionate release on his own behalf.

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court … may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).[2]

The decision to reduce a term of imprisonment pursuant to Section 3582(c)(1)(A) involves a three-step test, based on three substantive requirements. *United States v. Jones*, 980 F.3d 1098, 1106-08 (6th Cir. 2020); 18 U.S.C. § 3582(c)(1)(A)(i). At step one, a court must find that extraordinary and compelling reasons warrant a sentence reduction.[3] *Jones*, 980 F.3d at 1107-08. At step two, a court must find that such a reduction is consistent with <u>applicable</u> policy statements issued by the Sentencing Commission. *Id.* at 1108. At step three, a court must consider any applicable Section 3553(a) factors and, in its discretion, find that the reduction authorized by steps one and two is warranted in whole or in part under the particular circumstances of the case. *Id.* A court may deny a compassionate release motion when any of the three substantive requirements is lacking and need not address the others. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). However, a court cannot grant such a motion unless the court addresses "all three steps." *Id.*

Regarding the first step, "Section 3582(c)(1)(A) does not define 'extraordinary and compelling reasons.'" *Ruffin*, 978 F.3d at 1004. Congress instructed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). But apart from this instruction, "Congress delegated to the Sentencing Commission the

---

[2] Subpart (ii) of this portion of the statute provides "a separate basis for compassionate release tied to the defendant's age and years in prison." *Ruffin*, 978 F.3d at 1003.
[3] "Or, alternatively, whether the defendant fulfills the requirements of § 3582(c)(1)(A)(ii)." *Jones*, 980 F.3d at 1108 n. 12.

responsibility of describing what should be considered extraordinary and compelling reasons for sentencing reduction, including the criteria to be applied and a list of specific examples by promulgating general policy statements regarding the sentencing modification provisions in § 3582(c)(1)(A)." *Jones*, 980 F.3d at 1108-09 (alterations adopted) (internal quotation marks omitted). The Sentencing Commission's policy statement regarding compassionate release under Section 3582(c)(1)(A) resides in § 1B1.13 of the United States Sentencing Commission Guidelines Manual. *Id.* at 1109; U.S.S.G. § 1B1.13 ("Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)"). However, "the Commission has not updated § 1B1.13 since the First Step Act's passage in December 2018." *Jones*, 980 F.3d at 1109. Therefore, and for reasons more fully explained in *Jones*, the Sixth Circuit held that—until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act—district courts "have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13" in cases where an incarcerated person files a motion for compassionate release.[4] *Id.* at 1109-11 ("[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion"); *see also United States v. Harvey*, No. 20-1944, 2021 U.S. App. LEXIS 12652, 2021 WL 1661503, at *3 (6th Cir. Apr. 28, 2021) ("without an applicable policy statement, district courts have significant,

---

[4] In *Elias*, while not mandating that future courts apply the two-part test used by the district court in that case, the Sixth Circuit held that the district court did not abuse its discretion in applying a "two-part test for deciding when the concern of contracting COVID-19 becomes an extraordinary and compelling reason for compassionate release: (1) when the defendant is at high risk of having complications from COVID-19 and (2) the prison where the defendant is held has a severe COVID-19 outbreak." *Elias*, 984 F.3d at 520-21 (the district court did not abuse its discretion in relying on that two-part test; the district court properly considered the Centers for Disease Control and Prevention (CDC) guidance in effect at the time, a scientific journal, and information from the BOP concerning the number of reported COVID-19 cases at the prison). Additionally, the Sixth Circuit held that a district court may deny a motion for compassionate release if the defendant does not provide any records in the motion to support his or her claimed medical ailment(s). *Id.*

5

though not unlimited, discretion to define extraordinary and compelling reasons for relief on their own initiative").

Regarding the second step, again, the Sentencing Commission's policy statement regarding compassionate release under 18 U.S.C. § 3582(c)(1)(A) resides in U.S.S.G. § 1B1.13. *Jones*, 980 F.3d at 1109. However, the Sixth Circuit held in *Jones* that "the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release." *Id.*; *see also Elias*, 984 F.3d at 518 ("§ 1B1.13 is not applicable to inmate-filed compassionate-release motions"). Thus, U.S.S.G. § 1B1.13 currently is <u>not</u> an "applicable policy statement[] issued by the Sentencing Commission" in such cases. 18 U.S.C. § 3582(c)(1)(A); *Jones*, 980 F.3d at 1101, 1109. So now, "where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry," at least until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act. *Jones*, 980 F.3d at 1111.

Regarding the third step, "[d]istrict courts should consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114. The factors set forth in Section 3553(a) "consider such things as the characteristics of the defendant, the nature of the offense, and various penological goals, such as the need to promote respect for law and to protect the public." *Ruffin*, 978 F.3d at 1005. More specifically, 18 U.S.C. § 3553(a) states:

> (a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
>
> > (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> >
> > (2) the need for the sentence imposed--

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

        (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

        (ii) that, except as provided in section 3742(g) [18 U.S.C. § 3742(g)], are in effect on the date the defendant is sentenced; or

    (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement--

    (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

    (B) that, except as provided in section 3742(g) [18 U.S.C. § 3742(g)], is in effect on the date the defendant is sentenced[;]

>(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
>(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).  Among the variety of items that courts have considered in this step are conditions at the place of incarceration, the defendant's health issues, whether the defendant is receiving medical treatment for his or her health issues, the defendant's behavior in prison, the type of offense(s) for which the defendant was convicted, whether the defendant had prior criminal convictions (and, if so, how many and the seriousness of such crimes), whether the defendant had prior juvenile convictions, whether the defendant previously complied with any presentence or post-incarceration conditions, the amount of the sentence that the defendant has served to date, whether the court varied downward from the guidelines range when imposing the sentence, whether the defendant has had a drug addiction, the defendant's successful participation in substance abuse programming or other rehabilitation efforts while incarcerated, the defendant's successful participation in educational or vocational training while incarcerated, and whether the defendant took responsibility for his or her actions.  *Jones*, 980 F.3d at 1115; *Ruffin*, 978 F.3d at 1008-09.  Of course, not all of these items will be applicable or relevant (or known to the court) in all cases, and other items may be applicable or relevant.  *Id.*; *see also* 18 U.S.C. § 3582(c)(1)(A)(i) (a court should consider "the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable").

Finally, "Congress's use of 'may' in § 3582(c)(1)(A) dictates that the compassionate release decision is discretionary, not mandatory."  *Jones*, 980 F.3d at 1106; *see also* 18 U.S.C. § 3582(c)(1)(A)(i) (stating that a court "may" reduce the term of imprisonment); *Ruffin*, 978 F.3d at 1005 (a "district court has substantial discretion" in deciding whether to reduce a term of imprisonment pursuant to Section 3582(c)(1)(A)); *Elias*, 984 F.3d at 518 (a district court may

reduce the term of imprisonment if all three of the substantive requirements are met, "but need not do so").

### B. Application

Barker asks that the Court grant the Motion by either reducing his sentence to time served or "modifying his judgment as the court deems appropriate, including but not limited to allowing the remainder of his sentence to be served on home confinement." (Doc. No. 61 at PageID 193.) Barker argues that the environment at his institution causes him to be at a "heightened risk to contract the coronavirus" due to his weak immune system and hypertension. (*Id.* at PageID 194.) Barker asserts that, upon his release, he would return to live with his girlfriend in Ohio, and seek employment through temporary services. (*Id.*). Therefore, Barker contends he "has a stable home to which to return and is committed to finding employment." (*Id.* at PageID 197.)

In response, the Government argues that Barker has not demonstrated that he is eligible for release under 18 U.S.C. § 3582(c)(1)(A) and USSG § 1B1.13. (*See* Doc. No. 64.) The Government also asserts that the Bureau of Prisons ("BOP") has taken significant measures to protect inmates during the COVID-19 pandemic, and it argues that the nature and circumstances of Barker's crimes and his history and characteristics create clear public safety concerns under 18 U.S.C. § 3553(a). (*Id.*)

The Court now considers Barker's request for compassionate release through reducing his term of imprisonment pursuant to Section 3582(c)(1)(A). (*See* Doc. No. 61 at PageID 193.) Regarding step one, for the purposes of the Court's analysis, the Court will <u>assume</u>—without deciding—that Barker has demonstrated that suffering from his stated medical ailments during the current COVID-19 pandemic presents an extraordinary and compelling reason for reducing the

term of imprisonment.[5] Regarding step two, given that Barker (an incarcerated person) filed the Motion, the Court "may skip"—and does skip—this step, in accordance with the Sixth Circuit's *Jones* decision. *Jones*, 980 F.3d at 1111.

However, that does not end the Court's inquiry. There is still the third step: consideration of any applicable Section 3553(a) factors and determination of whether, in the Court's discretion, the reduction is warranted in whole or in part under the particular circumstances of this case. *Jones*, 980 F.3d at 1108; 18 U.S.C. § 3582(c)(1)(A)(i); *see also Ruffin*, 978 F.3d at 1005 ("[e]ven if [the first two requirements] are met, … a district court may still deny relief if it finds that the applicable § 3553(a) factors do not justify it") (internal quotation marks omitted).

The Court has considered the Section 3553(a) factors to the extent that they are applicable. 18 U.S.C. § 3582(c)(1)(A)(i). This includes Barker's criminal history and characteristics, the nature and circumstances of the offense, and his intentions upon release. *See* 18 U.S.C. § 3553(a)(1). Barker also accepted responsibility for his actions. Further, the Court acknowledges Barker asserts that he is suffering from underlying health issues during the challenging conditions posed by the COVID-19 pandemic. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(D).

Yet, the "nature and circumstances of the offense" do not favor early release. *See* 18 U.S.C. § 3553(a)(1). The offenses for which Barker was charged and pleaded guilty involved possession and distribution of heroin and fentanyl. (Doc. Nos. 42, 46.) Both substances are considered dangerous and potentially lethal drugs. 18 U.S.C. § 3553(a)(1), (a)(2)(A), (a)(2)(C); *United States*

---

[5] The Court emphasizes it has not actually found that any circumstance (separately or combined) alleged by Barker qualifies as an "extraordinary and compelling reason[] [that] warrant[s] a reduction" of his sentence. 18 U.S.C § 3582(c)(1)(A)(i). As shown herein, the Court need not actually conduct that analysis to decide the Motion. *See, e.g., Jones*, 980 F.3d at 1108 (affirming district court's decision, which had "assumed for the sake of argument that extraordinary and compelling reasons existed" to reduce the defendant's term of imprisonment, proceeded to weigh several § 3553(a) factors, and then denied the motion for compassionate release). Barker alleges he suffers from a "weak immune system and hypertension," but provides no evidence within his Motion relating to these adverse health factors. (Doc. No. 61 at PageID 194.) The record indicates only that he suffered a pinched nerve in his back in 2018 and has also had migraines and sinus issues. (PSI ¶ 67.)

*v. Taylor*, 449 F. Supp. 3d 668, 673 (E.D. Ky. 2020) (fentanyl is "an exceptionally dangerous drug"); *United States v. Brown*, 828 F. App'x 256, 257 (6th Cir. 2020) (finding heroin dealers to be "dangerous contributors to the opioid epidemic"). This weighs strongly against warranting a sentence reduction. *See United States v. Marshall*, No. 18-cr-20491, 2020 U.S. Dist. LEXIS 162919, 2020 WL 5369038, at *3 (E.D. Mich. Sept. 8, 2020) (noting that fentanyl is an extremely potent and dangerous drug and, thus, the nature of fentanyl-related offenses "weighs significantly against release").

Additionally, Barker's criminal history includes prior convictions for possession of controlled substances, as well as a conviction for conspiracy with intent to distribute. (PSI ¶¶ 52-54.) Barker had been released from supervision in April 2016 for the latter offense, just over two years before the actions of the present conviction. (PSI ¶ 52.) Further, Barker had previously been found in violation of his probation in December 2012. (*Id.*)

The combination of the nature of the offense and Barker's criminal history raise concerns. In this instance, the Section 3553(a) factors do not favor early release or a reduction in the term of imprisonment. The Court acknowledges that Barker has served over half of his 41-month sentence. *See United States v. Ruffin*, 978 F.3d 1000, 1008 (6th Cir. 2020) (acknowledging courts may consider time served when evaluating such motions). To reduce the sentence, however, would risk "minimiz[ing] the severity of his offense." *United States v. Chambliss*, 948 F.3d 691 (5th Cir. 2020).

Having considered the factors set forth in Section 3533(a) to the extent they are applicable, the Court finds that the requested reduction in term of imprisonment is not warranted. Thus, even if steps one and two authorized the requested reduction, the Court finds that consideration of the applicable Section 3553(a) factors calls for denial of the Motion for Compassionate Release. *Jones*,

980 F.3d at 1102 (affirming decision to deny motion for compassionate release where "the district court found for the sake of argument that an extraordinary and compelling circumstance existed in [defendant's] case but that the § 3553(a) factors counseled against granting compassionate release"); *Harvey*, 2021 WL 1661503, at *1, 3 (affirming denial of compassionate release motion, despite petitioner's chronic bronchitis, the spread of COVID-19 cases at his prison, and his status as a non-violent offender with no disciplinary actions against him at the BOP, where petitioner who pleaded guilty to distributing a controlled substance admitted that he had been selling drugs for over a year, the prosecutor asserted at sentencing that petitioner's house contained a gun and ammunition, petitioner had a criminal history of drug-related convictions, and petitioner had served only about 25% of his sentence); *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020) (affirming denial of a compassionate release motion where "the District Court reasonably concluded that several of the § 3553(a) factors—including … the need to reflect the seriousness of the offense, promote respect for the law, and afford adequate deterrence—counsel against compassionate release …").

### III.  CONCLUSION

Although the Court recognizes Barker's asserted medical ailments and is sympathetic to his arguments about the fear of contracting COVID-19, the circumstances here do not warrant a reduction in the term of imprisonment pursuant to Section 3582(c)(1)(A). For the reasons stated above, the Court **DENIES** the Motion for Compassionate Release (Doc. No. 61).[6]

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, June 17, 2021.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

---

[6] The Court acknowledges the valuable contribution and assistance of judicial intern Noah Brown in drafting this order.